

FILED
JUN 3 0 2014
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

RAY L. PETERSON, by and through )
SUSAN JONES, next friend and )
attorney-in-fact, and SUSAN JONES, )
)
      Plaintiffs, )
)
vs. ) No. CIV-13-1235-W
)
ED LAKE, Director of Oklahoma )
Department of Human Services, and )
JOEL NICO GOMEZ, Director of )
Oklahoma Health Care Authority, )
)
      Defendants. )

## ORDER

This matter comes before the Court on the cross Motions for Summary Judgment filed pursuant to Rule 56, F.R.Civ.P., by plaintiffs Ray L. Peterson, by and through Susan Jones, next friend and attorney-in-fact ("Peterson") and Susan Jones and defendants Ed Lake, in his official capacity as Director of Oklahoma Department of Human Services ("DHS"), and Joel Nico Gomez, in his official capacity as Director of Oklahoma Health Care Authority ("OHCA"). Based upon the record, the Court makes its determination.

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Rule 56(a), supra. At this stage of the litigation, the Court does not evaluate the credibility of the witnesses, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), or "weigh the evidence and determine the truth of the matter . . . ." Id. at 249. Rather, the Court must decide "whether there is a genuine issue for trial . . . [and] there is no [triable] issue . . . unless there is sufficient evidence favoring the nonmoving party for a [factfinder] . . .

to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," id. at 254, "presents a sufficient disagreement to require submission to a [factfinder] . . . or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)(citations omitted). And in reviewing such motions, the Court is "'entitled to assume that no evidence needs to be considered other than that filed by the parties[.]'" Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000)(quotation and further citation omitted). The Court must however "'construe all inferences in favor of the party against whom the motion under consideration is made[,]'" Pirkheim v. First Unum Life Insurance, 229 F.3d 1008, 1010 (10th Cir. 2000)(quoting Andersen v. Chrysler Corp., 99 F.3d 846, 856 (7th Cir. 1996)), and if disputes remain as to material facts, summary judgment is inappropriate.

Peterson and his daughter, Jones, brought this action under title 42, section 1983 of the United States Code, and they have contended that both Lake, as DHS Director, and Gomez, as OHCA Director, have administered the federally-funded Medicaid program in the State of Oklahoma in violation of title 42, sections 1396a(a)(8), 1396p(c)(2)(C) and 1396p(c)(1)(I) of the United States Code and title 20, section 416.1201 of the Code of Federal Regulations, by determining that Peterson is ineligible for Medicaid benefits. The

ultimate injunctive and declaratory relief sought by the plaintiffs is a finding by the Court that Peterson qualifies for, and is entitled to receive, Medicaid benefits.

Peterson owned certain real property in Ponca City, Oklahoma, which the plaintiffs have conceded had a fair market value of $62,500.00, see Doc. 38 at 13, and on July 3, 2013, Peterson, then aged 88 years old, executed a quitclaim deed, see Doc. 33-5, whereby he conveyed that property, which was his former residence, to Jones, his attorney-in-fact pursuant to a durable power of attorney executed on July 27, 2004. See Doc. 33-1. Immediately prior to the execution of the quitclaim deed, Jones, who by then had been living on the property for over two years with one son and four grandchildren, paid Peterson the sum of $5,000.00 and executed a promissory note in the amount of $57,500.00. See Doc. 33-3.

The promissory note, dated July 1, 2013, reads in pertinent part that Jones promises to pay Peterson, and the record reflects that Jones has expressed her intent to pay Peterson, e.g., Transcript of Hearing (December 2, 2013) at p. 20, lines 23-25 (hereafter "Hearing Transcript"),[1]

> 4 annual installments commencing on July 1, 2014,[2] and continuing on the same day of each and every year thereafter, with each such installment, except the last installment, to be in the sum of $14,816.00, and the last installment to be in the full amount of the then remaining unpaid balance of principal and interest. . . .

---

[1] See Deposition of Susan Jones (April 30, 2014) at p. 36, lines 5-7 (hereafter "Jones Deposition").

[2] The evidence is insufficient for a reasonable factfinder to determine whether Jones has paid any amounts toward the first annual installment. However, such does not preclude summary judgment in this instance since only disputes regarding material facts–facts that might affect the outcome of the lawsuit under the governing law render summary judgment inappropriate. E.g., Atlantic Richfield, 226 F.3d at 1148.

3

Doc. 33-3 at 1.

The promissory note further provided, inter alia, that Jones had the right to prepay the indebtedness evidenced by the note without penalty, see id., that Peterson's life expectancy was 4.40 years, see id., and that the note could not be cancelled upon Peterson's death. See id. at 2. The promissory note also provided that "[a]ll payments due . . . shall be paid in equal amounts . . . without any deferral or balloon payment of any amounts," id. at 1, and that neither Peterson nor Jones could "grant, bargain, sell, assign, convey or transfer th[e] note or any payments [t]hereunder except [Peterson could] . . . assign or transfer th[e] note for estate planning purposes to a revocable trust . . . ." Id. at 2.

Beginning in January 2010, Peterson received care at Via Christi Village ("Via Christi") in Ponca City; from February 2011 to July 3, 2013, he resided in the facility's memory care unit, and on the latter date–the same date, Peterson executed the quitclaim deed–Peterson returned to the skilled nursing unit, where he currently resides. See Doc. 33-2.

On July 31, 2013, Peterson applied for Medicaid benefits, and he requested that DHS assess his resources and ascertain his eligibility. See Doc. 33-6. In his application, Peterson represented that he received a monthly net income of $1,111.70 from Social Security Administration ("SSA") as well as monthly net incomes of $37.12 in retirement benefits and $56.66 in pension benefits. See id. at 2; id. at 7-8; Doc. 1-6 at 12.

Peterson advised that in 2012, he had paid a monthly premium in the amount of $99.90 for Medicare Part B and a monthly premium of $73.68 for Medicare Part D. See

4

Doc. 33-6 at 2. He also reported that he paid a monthly insurance premium in the amount of $172.90. See id.; id. at 8.

Peterson included as resources a checking account at RBC Bank, with a balance of $64.38 as of July 1, 2013, see id. at 2, a brokerage account with Symphonic Financial Advisors, LLC, which then had a current value of $235.74, see id.; Doc. 1-6 at 15, and a prepaid burial policy through Funeral Directors Life Insurance Company in the amount of $5,000.00. See Doc. 33-6 at 2; Doc. 1-6 at 16.

In connection with transferred property, Peterson revealed that he had sold a 1994 Lincoln Town Car for $500.00 in November 2012, see Doc. 33-6 at 2, and a 1997 Ford Ranger for $500.00 in May 2013. See id. He advised that he had applied the proceeds from these sales to amounts then due to Via Christi. See id.; id. at 10.

Peterson further stated in his application that he had sold his business, Paperback Alley, in Ponca City in 2012 for $25,000.00 and again had used the proceeds from that sale to pay for nursing care at Via Christi. See Doc. 33-6 at 3. He likewise reported both the sale of his residence to Jones and Jones' execution of the promissory note and payment of $5,000.00. See id.

Peterson claimed that he was eligible for assistance as of June 2013 since his resources, as reflected in his application, were below $2,000.00, see id., and he was therefore illiquid. See id.

Peterson provided DHS a letter dated August 5, 2013, that was written by attorney Robert T. Luttrell III. See Doc. 33-7. In the letter, Luttrell opined that Jones' note was "a reasonable promissory note based on the circumstances under which it was executed."

5

Id. at 1. Luttrell further opined that the note was "'of no value in the hands of a third party or in the secondary market.'" Id.

DHS issued its "Notice of Denial," see Doc. 33-8, on October 24, 2013. The stated reasons for the denial of Medicaid long-term care benefits were:

(1) Jones had sold Peterson's 1994 Lincoln Town Car for less than its fair market value;[3]

(2) Jones had also sold Peterson's 1997 Ford Ranger for less than its fair market value;[4] and

(3) Jones had transferred the real estate to herself in exchange for the promissory note without receipt of fair market value and that the note was both "an available resource," id. at 2, ¶ 3 (citation omitted), and "a trust-like device worth more than $2,000." id.

In resolving the issues surrounding DHS' denial of Peterson's application for Medicaid benefits, the Court finds first that Peterson and Jones have agreed to accept a transfer penalty of eleven (11) days for the sale of the two vehicles. See Hearing Transcript at p. 22, lines 14-17. The Court further finds as to the characterization of the promissory note as a "trust-like device"[5] that the Court's preliminary determination that the promissory note does not constitute a "trust-like device" should be and is hereby affirmed

---

[3]DHS contended that the vehicle had an average appraised value of $922.00. See Doc. 33-8 at 1, ¶ 1.

[4]DHS claimed that the average fair market value for this vehicle was $1,586.00. See id. at ¶ 2.

[5]In granting the plaintiffs' request for preliminary injunction, the Court found no evidence had been presented at that stage of the proceedings that warranted a finding that the promissory note executed by Jones was a "trust-like device." E.g., Doc. 17 at 9-10 n.5.

6

because the record fails to present a sufficient disagreement to require submission of this issue to a factfinder.[6]

Accordingly, the remaining issues presented by the parties' cross motions pertain only to whether the promissory note is "an available resource," whether the real estate was transferred without receipt of fair market value, whether section 1983 provides a cause of action in this instance for Peterson and whether Jones has stated a claim for relief.

"Congress established the Medicaid program in 1965 as Title XIX of the Social Security Act[, 42 U.S.C. §§ 1396-1396v,] to provide federal financial assistance to States that choose to reimburse certain medical costs incurred by the poor." Blum v. Yaretsky, 457 U.S. 991, 993-94 (1982); e.g., Zelman v. Simmons-Harris, 536 U.S. 639, 667 (2002) (O'Connor, J., concurring)(Medicaid is a welfare program); Morris v. Oklahoma Department

---

[6]The Court finds persuasive the explanation of the Honorable Robin J. Cauthron in Lemmons v. Lake, 2013 WL 1187840 (W.D. Okla. March 21, 2013), vacated as moot, 2013 WL 6913757 (W.D. Okla. June 28, 2013).

> Congress amended the Medicaid Act to create . . . "trust rules" in order to close a loophole exploited by some applicants: Because trusts frequently do not qualify as resources under the regular rules, some applicants placed their assets and money in trusts in order to evade the Medicaid Act's resource limitation. Now, 42 U.S.C. § 1382b(e) deems trusts and trust-like devices resources unless explicitly excluded. [SSA's Program Operations Manual System ("POMS")] define[s] a trust-like device as "a legal instrument, device, or arrangement, which may not be called a trust under State law, but is similar to a trust." POMS SI 1120.201(B)(5). A trust-like device must include: (1) a grantor (2) who transfers property (3) to an individual or entity with fiduciary obligations (a trustee) (4) "with the intention that it be held, managed or administered by the individual or entity for the benefit of the grantor or others."

Lemmons *4 (citations omitted).

There is no dispute in this case that property was transferred from parent to adult child or that the parent qualifies as a "grantor." The defendants, however, have presented no evidence from which a factfinder may infer that Peterson transferred the property to Jones in any trustee capacity or that Jones has any intention of using or holding the property for Peterson's benefit. See Gragert v. Hendrick, 2014 WL 287238 (W.D. Okla. January 24, 2014).

7

of Human Services, 685 F.3d 925, 928 (10th Cir. 2012)(quoting Brown v. Day, 555 F.3d 882, 885 (10th Cir. 2009))(Medicaid "administered cooperatively by states and the federal government to provide 'health care to persons who cannot afford such care'"). "If a state[, such as Oklahoma,] opts to participate, it receives financial assistance from the federal government, on the condition that the state operates its Medicaid program in compliance with federal statutory and regulatory requirements[,]" Brown, 555 F.3d at 885, and federal law requires a state's "plan for medical assistance must . . . provide . . . that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

One category of medical assistance provided by Medicaid is long-term care ("Medicaid LTC"), which pays for care for individuals who live in institutions, such as nursing homes. E.g., id. § 1396a(a)(10)(A)(ii)(V). To qualify for Medicaid LTC, an individual must have countable resources of $2,000.00 or less and must not have disposed of any assets for less than fair market value during the last five (5) years. E.g., 42 U.S.C. §§ 1396p(c)(1)(A), 1396p(c)(1)(B)(i).

For purposes of Medicaid, the term "resource" is synonymous with the word "asset." E.g., 20 C.F.R. § 416.120(c)(3)("[r]esources means cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his . . . support and maintenance"); id. § 416.1201(a)(resources means cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his . . . support and maintenance). See Gragert v. Lake, 541 Fed. Appx. 853, 857 (10th Cir. 2013)(cited pursuant to Tenth Cir. R. 32.1)(section 416.1201 provides operable definition of a "resource").

"If the individual has the right, authority or power to liquidate the property . . . , it is considered a resource[, but] [i]f a property right cannot be liquidated, the property will not be considered a resource of the individual . . . ." 20 C.F.R. § 416.1201(a)(1). "Liquid resources are cash or other property which can be converted to cash within 20 days," id. § 416.1201(b),[7] and

> promissory notes "are ordinarily liquid." But that is because promissory notes are ordinarily transferable and hence convertible to cash. If a promissory note cannot be transferred . . . , then it is not convertible to cash and therefore not a resource.

Gragert, 541 Fed. Appx. at 857 (emphasis deleted)(citation omitted).

SSA, "[i]n addition to its regulations, . . . has issued a Program Operations Manual System ('POMS') 'through which [it] further construes the statutes governing its operations.'" Id. (quotation omitted); e.g., Washington State Department of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371 (2003)(POMS is set of publicly available operating instructions for processing Social Security claims). "Consistent with . . . [section] 416.1201, the relevant POMS provision states that 'assets of any kind are not resources if the individual does not have . . . the legal right, authority, or power to liquidate them.'" Gragert, 541 Fed. Appx. at 856 (quoting POMS § SI 01110.15)(footnote omitted). The promissory note executed by Jones expressly provides that neither Peterson nor Jones "may grant, bargain, sell, assign, convey or transfer this note or any payments

---

[7]"Nonliquid resources are property which is not cash and which cannot be converted to cash within 20 days . . . . Examples of resources that are ordinarily nonliquid are loan agreements, household goods, automobiles, trucks, tractors, boats, machinery, livestock, buildings and land." 20 C.F.R. § 416.1201(c).

9

[t]hereunder except [Peterson] . . . may assign or transfer th[e] note for estate planning purposes to a revocable trust . . . ." Doc. 33-3 at 2.[8]

Because the note cannot be converted to cash and is, therefore, illiquid under section 416.1201, the Court finds, in the absence of any evidence to the contrary, that the promissory note executed by Jones is not an available resource to be used in assessing Peterson's entitlement to Medicaid benefits. Accordingly, the defendants erred in determining otherwise.

Such finding is in accord not only with the circuit court's treatment of a similarly-drafted promissory note in Gragert, but also with cases in this district, wherein nontransferable promissory notes have been deemed "nonavailable" resources. See, e.g., Harper v. State of Oklahoma ex rel. Oklahoma Department of Human Services, No. CIV-10-514-R (W.D. Okla. March 22, 2011)(promissory note not liquid resource because, by its terms, neither note nor its payments were subject to assignment, sale or transfer).

In determining whether DHS also erred in determining that the real estate was transferred without receipt of fair market value, the Court has considered section 1396p(c) and the exception contained therein. For purposes of this lawsuit, section 1396p(c)(1)(A) "provide[s] that if an institutionalized individual . . . disposes of assets for less than fair market value on or after the look-back date . . . , the individual is ineligible for medical assistance . . . ." 42 U.S.C. § 1396p(c)(1)(A). "The look-back date . . . is a date that is 60

---

[8]See Gragert, 541 Fed. Appx. at 857 ("POMS indicate that notes count as resources for eligibility purposes unless there is 'evidence of a legal bar to the[ir] sale')(quoting POMS SI 01140.300 at D-1, D-3 (effective May 22, 2003)).

months[ ]," id. § 1396p(c)(1)(B)(i), before the date an individual has been institutionalized and has applied for medical assistance under a state plan. E.g., id. § 1396p(c)(1)(B)(ii)(I).

Section 1396p(c)(2)(C), however, provides that an individual shall not be ineligible for medical assistance by reason of a transfer of assets for less than fair market value if "the individual intended to dispose of the assets either at fair market value, or for other valuable consideration[.]" Id. § 136p(c)(2)(C). No evidence has been presented from which a reasonable factfinder may infer that Peterson intended to dispose of his property for less than its fair market value or in the absence of valuable consideration or that Jones intended to pay less than the fair market value for the property, which, as Jones testified at the earlier hearing, was assessed at $57,500.00. See Transcript Hearing at p. 24, line 25 to p. 25, line 2; Doc. 1-6 at 48.

Section 1396p(c)(1)(I) further provides "with respect to a transfer of assets, that the term 'assets' includes funds used to purchase a promissory note, . . . unless such note . . . . has a repayment term that is actuarially sound," 42 U.S.C. § 1396p(c)(1)(I)(i), "provides for payments to be made in equal amounts during the term of the loan, with no deferral and no balloon payments made," id. § 1396p(c)(1)(I)(ii), and "prohibits the cancellation of the balance upon the death of the lender." Id. § 1396p(c)(1)(I)(iii). The parties have stipulated that the promissory note executed by Jones meets these three criteria. See Hearing Transcript at p. 13, lines 13-14.

The defendants have also challenged Peterson's reliance on section 1983. In his complaint, Peterson alleged that he is eligible for Medicaid benefits and that DHS's denial of his application for the same violated, among other statutory sections, section

1396a(a)(8).[9] Case law teaches that section 1396a(a)(8) creates a private right of action that is enforceable through section 1983. E.g., Gragert v. Hendrick, 2014 WL 287238 (W.D. Okla. January 24, 2014); Oklahoma Chapter of American Academy of Pediatrics (OKAAP) v. Fogarty, 366 F. Supp.2d 1050, 1108 (N.D. Okla. 2005); Shanks-Marrs v. Lake, Case No. CIV-13-64-L (W.D. Okla. June 14, 2013)(Doc. 21). See Bryson v.. Shumway, 308 F.3d 79 (1st Cir.2002); Sabree ex rel. Sabree v. Richman, 367 F.3d 180 (3d Cir. 2004); Doe v. Kidd, 501 F.3d 348 (4th Cir. 2007); Romano v. Greenstein, 721 F.3d 373 (5th Cir. 2013); Doe 1-13 v. Chiles, 136 F .3d 709 (11th Cir. 1998).[10]

Finally, the defendants have contended that Jones, individually, has failed to state a claim for relief, see Doc. 33 at 11-12; Doc. 37 at 5-6, which the Court has construed under Rule 56 as a contention that Jones has failed to come forward with sufficient evidence on an essential element of her case. In Count III of the complaint, Jones alleged that the defendants "have violated and are violating [her] . . . right to quiet enjoyment of her property," Doc. 1 at 8, ¶ 35, and in the pleading's prayer for relief, Jones sought a declaration[11] "that the [d]efendants have interfered with and continue to interfere with . .

---

[9]E.g., 42 U.S.C. § 1396a(a)(8)(state's "plan for medical assistance must . . . provide . . . that such assistance shall be furnished with reasonable promptness to all eligible individuals").

[10]See Clayton ex rel. Clayton v. Lake, 2014 WL 223061 *3 (W.D. Okla. January 21, 2014) (section 1396p(c)(2)(C) provides adequate statutory foundation for lawsuit brought pursuant to section 1983). See also Lemmons, 2013 WL 1187840 *3.

[11]Title 28, section 2201(a) of the United States Code, on which Jones has relied, see Doc. 1 at 2, applies only in "a case of actual controversy." Jones has characterized the defendants' argument as one challenging her standing to prosecute this action; "[i]t is not enough, however, that [Jones] . . . has standing to seek declaratory relief." 10B C. Wright, A. Miller and M. Kane, Federal Practice and Procedure § 2757, at 470-72 (3d ed. 1998). There must be an actual controversy between the parties, and "[f]or there to be an actual controversy the defendant[s] must be so situated that the parties have adverse legal interests." Id. at 472 (footnote omitted).

. [her] right to quiet enjoyment of her property by considering . . . [her] property when determining . . . Peterson ineligible for Medicaid benefits." Id. ¶ 3.[12]

Assuming that Jones has identified a cause of action over which this Court has subject matter jurisdiction against these defendants in their official capacities, the Court nevertheless finds that Jones is not entitled to the relief she has requested. As the defendants have argued, Jones' contention that she has been damaged by the defendants' actions because she would be required to sell the property to pay for Peterson's care[13] is based upon speculation and conjecture. At her deposition, Jones was asked the following questions, and she gave the following answers;

> Q Okay. To your knowledge, as of this day, has DHS done anything to force you to sell that house?
>
> A No, ma'am.

Deposition of Susan Jones (April 30, 2014) at p. 25, lines 2-4.

---

[12]Jones alleged in her complaint
(1) that her "property rights are affected by [DHS's] determination . . . denying . . . Peterson's eligibility for Medicaid benefits," Doc. 1 at 2, ¶ 2;
(2) that DHS has "interfered with . . . [her] property by counting the value of the home against . . . [Peterson] in evaluating his eligibility for Medicaid," id. at 5, ¶ 20;
(3) that DHS is "effectively forcing . . . [her] to sell her home to pay for . . . Peterson's care[,]" id.; and
(4) that if she "is forced to sell or return her home, where she resides with her four adopted grandchildren, to pay for . . . Peterson's care, [she] . . . will suffer irreparable harm, as she is without means to provide alternative housing to her family." Id. at 6, ¶ 26.

[13]Jones has conceded that she has no "legal duty to pay for [her] father's care[.]" Jones Deposition at p. 25, lines 5-6.

> Q Do you believe that you have a legal duty to pay for your father's care?
> . . . .
> A For his care in the nursing [home]?
> . . . .
> A No. I don't believe so.

Id. lines 5-11.

> Q What kind of damage has been done to you because of the action DHS has taken against your father?
>
> . . . .
>
> Q Do you believe that your ownership of your father's house has been damaged in any way by things that DHS has done?
>
> A I guess I don't understand how it would be damaged. I mean, I don't want to lose it. It's the only place that me and the kinds have to live. But I'm not – other than having to be out money to come back and forth for things like this. I mean, it's cost me money and a lot of worry between me and the kids. . . . But physical damage, I don't know.
>
> Q Has your title been clouded, to your knowledge?
>
> A No. . . .

Id. at p. 25, line 22 to p. 26, line 15.

> Q Okay. Has there been a lien filed by anyone against the house where you're living now?
>
> A Not that I'm aware of.

Id. at p. 26, lines 23-25.

> Q Okay. Has anything that DHS has done pursuant to trying to . . . get this straightened out with your dad as to whether he qualifies for the program or not, has anything that DHS has done kept you from borrowing money against the house?
>
> A I haven't actually borrowed any yet, but, no. At this time, no.

Id. at p. 27, lines 1-7.

Because Jones has failed to establish a reasonable inference of causation or provide evidence supporting the requested declaratory relief, she has failed to show

disputed issues of material fact exist with regard to all elements of her cause of action,[14] and the defendants are entitled to judgment as a matter of law against Jones.

Accordingly, the Court

(1) GRANTS the plaintiffs' Motion for Summary Judgment [Doc. 32] filed on May 1, 2014, as to the three issues presented therein: the promissory note is neither an available resource nor a trust-like device and no penalty applies in connection with the sale of Peterson's home to Jones;

(2) DENIES the defendants' Motion for Summary Judgment [Doc. 33] filed on May 1, 2014, as to Propositions II and III set forth therein, but GRANTS said Motion as to Proposition I; and

(3) DIRECTS the parties to confer and submit within seven (7) days a proposed judgment for the Court's approval and signature.

ENTERED this 30th day of June, 2014.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[14] Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such situations, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.